Edward GRAHAM, Appellant,

v.

ABE MATHEWS
ENGINEERING, Respondent,

BUTLER MANUFACTURING CO.,
defendant and third party
plaintiff, Respondent,

v.

BLANDIN WOOD PRODUCTS, Third
Party Defendant,

LASCO, INC., third party defendant
and fourth party plaintiff,
Respondent,

v.

COMMERCIAL UNION INSURANCE
COMPANIES, fourth party
defendant, Respondent.

No. C6-84-951.

Court of Appeals of Minnesota.

Nov. 20, 1984.

**132**

Joseph T. Herbulock, Abrams & Spector, P.A., Edina, for appellant.

John D. Kelly, Frederick A. Dudderar, Jr., Hanft, Fride, O'Brien & Harries, Duluth, for Abe Mathews Engineering.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Edward Graham appeals from the trial court's summary judgment in favor of Abe W. Mathews Engineering Co. (Abe Mathews) in a personal injury action for injuries Graham sustained while using an allegedly improper tool on a construction project for which Abe Mathews was engineer and project manager. The trial court dismissed the company on the ground that it had no duty to provide safe tools to Graham or to ensure the safety of tools he used. We affirm.

## FACTS

Blandin Wood Products Co. contracted with Butler Manufacturing Co. to construct a building and with Abe Mathews to act as engineer and project manager. Butler subcontracted with Lasco, Inc., to erect the roof in accordance with the requirements of the Butler/Blandin contract. Lasco did not directly contract with either Abe Mathews or Blandin. Appellant Graham worked for Lasco as an ironworker.

On June 8, 1981, Graham and another Lasco employee were tightening structural bolts in roof girders. Graham was in a lift basket 40 to 45 feet above the ground, using a ratchet wrench in conjunction with a "cheater bar" (a four to five foot piece of pipe placed over the 18-inch ratchet handle to gain greater leverage). He would place the ratchet and cheater bar combination on the bolt, the other employee standing above him on a flange would ratchet the bar until it was at an appropriate angle, and then Graham would jump up and hang on the bar, using his body weight to turn and tighten the bolt. Apparently something slipped in the ratchet mechanism while Graham was hanging from the bar 12 to 18 inches above the floor of the lift basket, and he fell, landing on his feet. The co-worker fell on top of him. Graham has had continuing pain and has been unable to do ironwork since the accident.

Graham claims that the ratchet and cheater bar combination was an improper tool and that he should have been supplied with an air impact wrench. The ratchet and cheater bar were supplied to Graham by his supervisor, Tom Snook, also a Lasco employee. Graham and a co-worker claim they asked Snook for an air impact wrench before the accident. Snook told them that Lasco did not have one and that it was not worth getting one for the amount of work left on the job. Graham also said he asked an Abe Mathews engineer for an air impact wrench and that the engineer said Graham would have to talk to Graham's supervisor at Lasco. The only tool provided by Abe Mathews was a torque wrench that Abe Mathews allowed Lasco employees to borrow and use because Lasco did not have one.

## ISSUE

Did the engineering company breach any duty to appellant to provide or ensure the use of safe tools?

## ANALYSIS

An omission constitutes negligence only when there is a duty to act affirmatively. *Ruberg v. Skelly Oil Co.*, 297

N.W.2d 746, 750 (Minn.1980). Graham argues that Abe Mathews' duty to ensure the use of safe tools can be inferred from contract language and from the parties' course of conduct. The contract language Graham relies on, however, is from the Blandin/Butler contract. In contrast, Abe Mathews' contract with Blandin specifically states that Abe Mathews "will not be responsible for the construction means, methods, techniques, sequences, or procedures or the safety precautions incident thereto." The Company's duty cannot be inferred from language in a contract to which it was not a party, particularly when language from its contract with Blandin creates no such duty.

Graham also claims that Abe Mathews' duty to ensure safe tools can be inferred from its practice of allowing Lasco employees to borrow and use a torque wrench (used to check bolt tightness) and from one instance when Graham and another Lasco employee asked an Abe Mathews engineer for an air impact wrench.

Because we are reviewing a summary judgment, this court must view the evidence in the light most favorable to Graham, against whom the motion was granted. *See Grondahl v. Bulluck,* 318 N.W.2d 240 (Minn.1982). Even in the most favorable light these incidents do not support an inference of a duty that is far broader than that for which Abe Mathews contracted. As the trial court noted, "it is only by the most tortured and unacceptable methods that * * * a duty to provide tools or to supervise the providing of tools can be said to devolve upon [Abe Mathews]." Summary judgment was appropriate to remedy the inappropriate joinder of Abe Mathews in this lawsuit.

### DECISION

The trial court's summary judgment in favor of Abe Mathews Engineering is affirmed.

Affirmed.